## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Steven A. Monks and
Deborah J. Monks,

         Plaintiffs,

vs.

Diamond Resorts International, Inc.,
a Delaware Corporation, and
Diamond Resorts U.S. Collection
Development, L.L.C.,
a Delaware Limited Liability Company,

         Defendants.

No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs, Steven A. Monks and Deborah J. Monks (hereinafter, "Plaintiffs" or the "Monks") hereby sue, by and through their undersigned counsel, Defendants Diamond Resorts International, Inc., (hereinafter "DRI") and Diamond Resorts U.S. Collection Development, L.L.C., (hereinafter "DRI US"), complain and allege as follows:

## JURISDICTION, PARTIES AND VENUE

1.      Plaintiff Steven A. Monks is a resident and citizen of Martin County, Florida.

2.      Plaintiff Deborah J. Monks is a resident and citizen of Martin County, Florida.

3.      Defendant Diamond Resorts International, Inc. ("DRI") is a Delaware corporation wholly owned by Dakota Parent, Inc., which is wholly owned by Dakota Intermediate, Inc., which is wholly-owned by Dakota Holdings, Inc., which is owned by affiliates of certain funds managed by affiliates of Apollo Global Management, LLC, a public company.  Defendant DRI's principal

place of business is located at 10600 West Charleston Boulevard, Las Vegas, Nevada, and Defendant DRI is a citizen of the State of Delaware and Nevada.

4.      Defendant Diamond Resorts U.S. Collection Development, L.L.C. ("DRI US"), is a Delaware Limited Liability Company wholly-owned by Diamond Resorts Developer and Sales Holding Company, which is wholly owned by Diamond Resorts Corporation, which is wholly owned by Diamond Resorts International, Inc.  Defendant DRI US's principal place of business is located at 10600 West Charleston Boulevard, Las Vegas, Nevada, and Defendant DRI US is a citizen of the State of Delaware and Nevada.

5.      This is an action seeking damages in excess of $75,000 as well as injunctive and equitable relief.  Accordingly, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of the parties and the aggregate amount in controversy exceeds $75,000.

6.      Defendant DRI US consists of a collection of timeshare interests in resorts located in Arizona, California, Colorado, Florida, Indiana, Missouri, Nevada, New Mexico, South Carolina, Tennessee, Virginia, and St. Maarten.

7.      Defendant DRI and Defendant DRI US (hereinafter collectively referred to as "Defendants" or "Diamond"), have offices in the State of Florida and own timeshare resorts located throughout the State of Florida, regularly sell timeshare interest to consumers in the State of Florida.  Defendant DRI US serves as the managing entity for the timeshare resorts and interests it sells, that are contained within its collection.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the wrongful acts giving rise to Plaintiffs' claims alleged herein occurred within the judicial district,

and all Defendants regularly conduct business in, have engaged and continue to engage in the alleged wrongful conduct, and thus, are subject to personal jurisdiction in this judicial district.

9.       Defendant DRI is in the business of selling timeshare interests, as defined by Florida statute, to members of the consuming public. Fla. Stat. § 721.05(33). Defendant DRI is a "developer" as defined by Florida Statutes. Fla Stat. § 721.05(10).

10.      On or about March 25, 2004, March 29, 2007, and June 11, 2008, Plaintiffs purchased their timeshare interests from Defendants and Defendants' predecessors in interest.  As such, Plaintiffs are "purchasers" as that term is defined by Section 721.05(30), Florida Statutes. Attached respectively, a true and correct copy of the agreements, as **Exhibit "A," "B," and "C,"** and made a part hereof by this reference.

11.      Plaintiffs' 2004 purchase of their timeshare interest was in the form of deeded weeks and points from Sunterra Corporation, a predecessor entity of Defendants. Defendants have assumed all rights and obligations from Sunterra Corporation with respect to Plaintiffs' 2004 purchase of timeshare interests.

12.      Between March 2004, and June 2008, Plaintiffs purchased timeshare interests in the form of deeded weeks and points directly from Defendants.

<u>**GENERAL ALLEGATIONS**</u>

***Overview of Defendants' Business Model***

13.      Defendants are in the business of selling timeshare interests to members of the consuming public.  Rather than transacting business using a traditional timeshare model where purchasers actually own a fractional interest in real estate that metaphorically comes with the "bundle of sticks" associated with the use and enjoyment of real property, Defendants have created

an elaborate and complex scheme to induce purchasers to buy extremely expensive Memberships in "Collections" Defendants have created.

14.     This complaint relates to and derives from the actions of Defendant DRI and Defendant DRI US, the latter of which is DRI's largest Collection in terms of total members.

15.     Defendants, per the terms of their contract in Paragraph 7, a true and correct copy of which is attached hereto as Exhibit C refer to Membership in DRI US as a "right-to-use" vacation club, where a trustee holds the timeshare properties and/or interests in trust for the alleged benefit of DRI US members, including Plaintiffs. See attached Exhibit "C" ¶ 7.

16.     Dependent upon the amount of money a purchaser pays to Defendants, the purchaser is allotted a point value each year, which is determined at the sole discretion of Defendants. This point value may stay constant from year to year, but the points required for a specific accommodation may fluctuate from year to year, once again at the sole discretion of Defendants.

*Defendants' Points Based Scheme*

17.     Points are an integral part to Defendants' timeshare scheme because points act as a currency that purchasers, like Plaintiffs, can use in an attempt to make reservations in Defendants' reservation system.

18.     Defendants, per the terms of their own contracts, voluntarily subject themselves the Uniform Commercial Code. See attached Exhibit "C" ¶ 11(c). Regardless of Defendants' admission the Uniform Commercial Code governs all transactions relating to promissory notes under Article 3, and all secured transactions under Article 9, both of which apply to the transaction that occurred between Plaintiffs and Defendants.

19.     Points sold to purchasers are classified as a "general intangible" under the Uniform Commercial Code of the State of Florida. Fla. Stat. § 679.1021(pp).

20.     In order to induce the purchase of points, Defendants promote points as an investment, and show potential purchasers charts and graphs that show points increasing in value over time. See attached **Exhibit "D."**

21.     Defendants' claim and publish that these points have a market value, which per their own disclosures as of October 1, 2016 is $8.52 per point in the DRI US Collection. See attached **Exhibit "E."** (Also viewable at https://www.diamondresorts.com/terms-and-conditions.)

22.     Additionally, points in Defendant DRI's Hawaii Collection have a market value at $9.84 a point as of January 1, 2016. See attached **Exhibit "F."**

23.     Once purchased, the points are automatically deposited into an exchange pool managed or otherwise controlled by Defendants and their affiliated entity, Diamond Resorts International Club, Inc., doing business as "THE Club®" (hereinafter referred to as the "Club"). The Club does not technically sell memberships on behalf of Defendants, but is the reservation system which purchasers must use in order to attempt to make reservations for rooms or other accommodations.

24.     The ability to make reservations for specific resort locations and specific dates through the Club is not guaranteed to an owner.

25.     "Purchaser's membership in THE Club exchange program is automatic and is subject to the payment of such fees as are from time to time imposed by DRIC [referring to Diamond Resorts International Club, Inc.]." Further, "[t]he Affiliation Agreement calls for the annual membership fee for THE Club exchange program. . ." See attached Exhibit "C" ¶16.

26.     Participation in the Club is material to the purchase contract, automatic to purchasers, and continued as long as purchasers pay the associated fees.

27.     Defendants charge an annual fee of $225 - $299.99 for purchasers to be Members in the Club. See Exhibit "C" ¶14 of the Original Sales Certificate.

28.     Defendant DRI, according to its Public Offering Statement and Purchase Agreement, make enrollment in the Club mandatory for a points-owner. See Exhibit "C" ¶16 of the Terms and Conditions.

29.     On or about March 25, 2004 Plaintiffs signed an agreement with Grand Beach Resort, Limited Partnership, located in Orlando, Florida, a predecessor in interest for Defendants, for the purchase and sale of certain timeshare properties, however denominated the properties on a 'points of access' basis or points based system. A true and correct copy of the agreement are attached hereto as Exhibit "A," and made a part hereof by this reference (hereinafter referred to as the "Agreements").

30.     On or about March 29, 2007 Plaintiffs executed an agreement with Sunterra Development, LLC a predecessor in interest of Defendants, by executing Florida documents as shown on the top of the first page of Exhibit "B," for the purchase and sale of certain timeshare properties, however denominated the properties on a 'points of access' basis or points based system. A true and correct copy of the agreement is attached hereto as Exhibit "B," and made a part hereof by this reference.

31.     On or about June 11, 2008 Plaintiffs executed an agreement with Defendants, by executing Missouri documents as shown on the top of the first page of Exhibit "C," for the purchase and sale of certain timeshare properties, however denominated the properties on a 'points of

access' basis or points based system. A true and correct copy of the agreement is attached hereto as Exhibit "C," and made a part hereof by this reference.

32.     The agreements executed between Plaintiffs and Defendants' predecessors in interest, and Defendants (hereinafter collectively the "agreements") are at issue.

### *Plaintiffs' 2004 Contract*

33.     Plaintiffs made their first initial timeshare purchase, in the form of a deeded week interval on the resale market on or about February 2003.

34.     Plaintiffs subsequently purchased from Sunterra Development, LLC a predecessor in interest of Defendants, on or about March 25, 2004 (hereinafter referred to as the "2004 Contract"), from Grand Beach Resort (hereinafter "Grand Beach"), located in Orlando, Florida, evidenced by their executed purchase agreement. A true and correct copy of the 2004 Contract, along with assignment agreements, is attached as Exhibit "A."

35.     Part and parcel to their purchase, Plaintiffs purportedly assigned their deeded real property purchase to Club Sunterra, Inc. (hereinafter "Club Sunterra") contemporaneously with the execution of all contract documents.

36.     Club Sunterra is analogous to the Club, and is an exchange club for the alleged benefit of purchasers. These alleged benefits induced Plaintiffs to purchase and join Club Sunterra.

37.     Included in the plethora of documents Plaintiffs are instructed to sign or initial, is a document entitled "Purchaser's Understanding and Acknowledgement of Timeshare Interest Purchase." This document claims to ensure that Plaintiffs "are aware of certain rights, privileges, and obligations. . ." that derive from their timeshare purchase. See attached Exhibit "A."

38.     The expressed terms of the 2004 Contract state:

"**Seller has no resale or rental program** for non-Seller owned Timeshare Interests, and no salesperson or other representative of Seller has made any representation to me/us that Seller or any agent or representative of Seller can or will handle the resale or rental of my/our Timeshare Interest. **I/We understand that I/we may sell my/our Timeshare Interest or rent any properly reserved Use Period to which I am/we are entitled**, either on my/our own or through the use of a properly licensed sales or rental agent. I/We acknowledge that Seller does not recommend or endorse any particular such sales or rental agent."

(emphasis added). See attached Exhibit "A" ¶10.

39.     The expressed and implied terms of the Purchase Agreement and disclosures provided to Plaintiffs clearly establish that Plaintiffs have the unimpeded right to rent out their Timeshare Interests as they see fit.

40.     During the execution of the 2004 Contract, Plaintiffs never received the governing rules and regulations for Club Sunterra.

41.     When Plaintiffs inquired about the rules relating to the club, the salesperson informed them that Grand Beach had no more physical copies, but that they would provide Plaintiffs the documents once available.

42.     Plaintiffs received at the time of execution, a Members Guide, which they were told reflected the rules and regulations of Club Sunterra. Plaintiffs received the governing rules and regulations for Club Sunterra only after the rescission period had lapsed.

43.     Plaintiffs only received complete and accurate disclosures related to the terms and conditions relating to Club Sunterra's governing rules and regulations, after the rescission period had lapsed, and not as required at the time of purchase.

*Plaintiffs' 2007 Contract*

44.     Plaintiffs made a subsequent timeshare purchase on or about March 29, 2007 (hereinafter referred to as the "2007 Contract"), from Club Sunterra Development, LLC (hereinafter "CSD") evidenced by their executed purchase agreement. A true and correct copy of the 2007 Contract, along with assignment agreements, is attached as Exhibit "B."

45.     Unlike their 2004 Contract, the 2007 Contract executed by Plaintiffs, was for the outright purchase of points, with no deeded real estate interest purportedly requiring assignment to permit points-based access.

46.     However, comparable to the 2004 Contract, the 2007 Contract states that "[p]urchaser understands that Seller has no resale or rental program for non-Seller owned Memberships and acknowledges that neither Seller nor any of its sales agents, employees, or other representatives has indicated that Purchaser will be assisted in the resale or rental of his or her Membership in the future."  See attached Exhibit "B" ¶15.

47.     Included in the plethora of documents Plaintiffs are instructed to sign or initial, is a document titled "Purchaser's Understanding and Acknowledgement of Timeshare Membership Purchase." This document claims to "reassure" Plaintiffs' understanding and expressly states that "I understand that **I may rent or allow others to use my rights**." See attached Exhibit "B" ¶16 (emphasis added).

48.     The expressed and implied terms of the Purchase Agreement and disclosures provided to Plaintiffs clearly establish that Plaintiffs have the unimpeded right to rent out their Timeshare Interests as they see fit.

49.     Material to the execution of the 2007 Contract was the ability of Plaintiffs to convert external resales into Club Sunterra points. This promise by Club Sunterra became a

material term of the contract, upon which Plaintiffs relied upon. This promise was part of the basis of the bargain between Plaintiffs and predecessors of Defendants, and is evidenced by a letter executed contemporaneously with the 2007 Contract. Attached as **Exhibit "G."**

50.     The aforementioned letter states that for twelve months, Plaintiffs "have the ability to purchase up to 3 resales and be able to convert into Club Sunterra at no cost to you."

51.     Plaintiffs relied upon this material representation and subsequently purchased resale timeshare interests in order to convert them into Club Sunterra points.

52.     In reliance upon this material representation, Plaintiffs purchased and converted three (3) additional timeshare interests to deposit into Club Sunterra. See attached Exhibit "B."

53.     During the execution of the 2007 Contract, Plaintiffs were told by predecessors of Defendants that since they were already "legacy" owners, that they already had the Governing Rules and Regulations.

54.     Plaintiffs never received Governing Documents for the Club Rules and Regulations as required at the time of purchase.

### *Plaintiffs' 2008 Contract*

55.     Plaintiffs executed a third timeshare purchase on or about June 11, 2008 (hereinafter referred to as the "2008 Contract"), from Defendant DRI US evidenced by their executed sales certificate. A true and correct copy of the 2008 Contract, along with assignment agreements, is attached as Exhibit "C."

56.     Much the same as their 2007 Contract, the 2008 Contract executed by Plaintiffs was for the outright purchase of points with no deeded real estate interest purportedly requiring assignment to permit points-based access.

57.     The 2007 Contract and the 2008 Contract are essentially identical concerning their respective boilerplate terms and conditions.

58.     The 2008 Contract states that "[p]urchaser understands that Seller has no resale or rental program for non-Seller owned Memberships and acknowledges that neither Seller nor any of its sales agents, employees, or other representatives has indicated that Purchaser will be assisted in the resale or rental of his or her Membership in the future."  See attached Exhibit "C" ¶15.

59.     Material to the execution of the 2008 Contract was the express promise to Plaintiffs to convert their existing interest and external resales into points within Defendants' Club. See attached Diamond Resorts Upgrade Purchase Proposal of Exhibit "C."

60.     This promise by DRI US became a material term of the contract, upon which Plaintiffs relied.

61.     Further, this promise was part of the basis of the bargain between Plaintiffs and Defendants and is evidenced by the "Diamond Resorts Upgrade Purchase Proposal," executed contemporaneously with the 2008 Contract. Attached as **Exhibit "H."**

62.     The "Diamond Resorts Upgrade Purchase Proposal" explicitly states that Plaintiffs have the ability to bring these previous contracts into the Club at no cost to Plaintiffs. In addition, as a material condition to the 2008 Contract, the Plaintiffs were promised the ability to convert resale weeks and points into the Club within the next twelve (12) months without limitation. See Exhibit "H."

63.     Plaintiffs relied upon this material representation and subsequently purchased resale timeshare interests in order to convert them into Club points.

64.     In further reliance upon this material representation Plaintiffs purchased and converted five (5) additional timeshare interests to deposit into the Club. See attached Exhibit "C."

65.     During the execution of the 2008 Contract, Plaintiffs were told by Defendants that since they were already "legacy" owners, that they already had the Governing Rules and Regulations.

66.     Plaintiffs never received Governing Documents for the Club Rules and Regulations.

67.     As a result of the execution of the 2008 Contract, and the subsequent assignment agreements, Plaintiffs own approximately 194,500 points within Defendants' Club. The points include, 28,500 points of which are now sold as part of Defendant DRI's Hawaii Collection.

*Defendants Wrongful Suspension of Plaintiffs' Ownership*

68.     Subsequent to their 2008 Contract, Plaintiffs have used for personal enjoyment, and rented to friends, family, and third parties their unused timeshare points without issue.

69.     When Plaintiffs have rented their points to others, they have used the rental income to pay the maintenance fees, costs, and general expenses associated with their contracts which, these rental rights are expressly permitted per their contract, and was represented to them by Defendants' agents, employees, and representatives in order to induce each of Plaintiffs' purchases.

70.     Plaintiffs began renting their points without issue in 2006.

71.     On or about February 11, 2016, almost a decade after the execution, use, and rentals of Plaintiffs' ownership interest derived from the 2008 Contract, Defendants sent an unprovoked Notice of Suspension of Plaintiffs ownership with a demand to cease and desist, demanding that Plaintiffs execute an agreement not to rent out their timeshare points. Attached as **Exhibit "I."**

72.     Plaintiffs, caught off guard by Defendants' demand, responded to Defendants' demand by letter dated February 26, 2016, asserting that per the terms of their contract, Plaintiffs had every right to rent out their timeshare ownership. See attached as **Exhibit "J."**

73.     Plaintiffs also pointed out to Defendants that they have never received nor executed any documentation limiting their rental abilities.

74.     Plaintiff's letter further brought to Defendants' attention that per Defendants' own June 2008 Members Guide:

> Guests. Would you like to make a gift or ***offer some or all of your points  allocation to someone outside of your immediate family***? Simply make a confirmed reservation with THE Club® and request a name change. Provide the name of the guest that will be checking in and the reservation will be updated. And the best part is there is no exchange fee.

(emphasis added). See attached Exhibit "J."

75.     Notwithstanding Plaintiffs' ongoing dispute, on or about October 27, 2016, Plaintiffs attended yet another timeshare presentation conducted by sales manager Scott McCullough at Defendant DRI's Orlando Mystic Dunes Resort.

76.     During this presentation, Plaintiffs advised Mr. McCullough, an agent of Defendants, of their ongoing dispute with Defendants regarding their timeshare interest rental rights. Defendants' agent reassured Plaintiffs that they can rent out their points to anyone they desired, as long as they do not start their own company or website to compete with Defendants.

77.     Unable to resolve the suspension issue with Defendants, Plaintiffs had no other option but to elicit the assistance of counsel.

78.     On or about November 14, 2016, Plaintiffs sent Defendants a demand to be compensated for Defendants' wrongful denial of Plaintiffs' right to rent.

79.     On or about January 9, 2017, Defendants responded in retaliation to Plaintiffs' correspondence by unilaterally terminating Plaintiffs' assignment agreements, and revoking the points associated with Plaintiffs' assignments.

80.     As a result of Defendants' unilateral revocation, Plaintiffs have been damaged numerous ways including but not limited to loss of rental benefits and revenue, and loss of meaningful use and benefit of their timeshare interests, including the full market value of their points according to proof, together with prejudgment interest, shortening of their reservation window, the looming threat, and the stress associated with, the threat that Defendants will suspend their account, and benefits associated with Defendants' Club Select Program.

<u>**COUNT I**</u>
<u>**VIOLATION OF THE FLORIDA UNIFORM COMMERCIAL CODE**</u>

81.     Plaintiff restates and reallege paragraphs 1 through 80 as if fully set forth therein.

82.     Per the express terms of the 2008 Contract, Defendants have subjected themselves to the Uniform Commercial Code, Florida Statutes Chapters 671, 673, and 673 (hereinafter referred to as "UCC").

83.     UCC Article 1 is activated in all Uniform Commercial Code related matters, governed by another Article of the UCC. Fla. Stat. § 671.101.

84.     UCC Article 9 is activated by the expressed terms of the contracts and by reason of the security interest in a purchaser's use rights. Fla. Stat. § 679.1011 *et seq*.

85.     Florida's UCC states that "[u]nless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, **estoppel**, **fraud**, **misrepresentation**, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions." Fla. Stat. § 671.103 (emphasis added).

86.     Florida's UCC states further, that "[e]very contract or duty within this code **imposes an obligation of good faith in its performance and enforcement**." Fla. Stat. § 671.203 (emphasis added). Good faith is defined by Florida's UCC to mean "honesty in fact and the observance of reasonable commercial standards of fair dealing." Fla. Stat. § 671.201(20).

87.     Between the execution of the 2004, 2007, and 2008 Contracts and the date in which Defendants demanded Plaintiffs to cease and desist renting, both parties, Plaintiffs and Defendants, established a course of performance as defined by Florida's UCC. Fla. Stat. § 671.205(1).

88.     By the nature of their contracts, and their contracts' expressed terms, Defendants have subjected themselves to Florida's UCC.

89.     Thus, the contracts between Plaintiffs and Defendants are subject to the principles of law and equity, including estoppel, fraud, and misrepresentation.

90.     Further, Defendants' have the obligation to act in good faith relating to the performance and enforcement of the contracts executed between themselves and Plaintiffs.

91.     The contracts between Plaintiffs and Defendants state that Plaintiffs have the right to rent out their timeshare interests, and through the course of performance established between the ongoing relationship between the parties for almost a decade have acquiesced to Plaintiffs' actions without objection.

92.     Defendants failed to act in good faith in their performance and enforcement of the contracts between themselves and Plaintiffs by unilaterally suspending Plaintiffs' use rights related to their timeshare interest purchases.

93.     The threat of suspension, and unilateral cancellation of the assignment agreements proximately caused injury to Plaintiffs.

94.     As a direct and consequential result of Defendants' actions, Plaintiffs have suffered damages including, but not limited to, loss of rental revenue and loss of meaningful use of their timeshare interests.

95.     As a proximate result of the actions described herein, Plaintiffs have been damaged in an amount to be determined at trial, exclusive of attorney's fees and costs.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants for actual damages, consequential damages, costs, interest, reasonable attorney's fees, enjoinder from further violations of these parts and any other such relief this Court may deem just and proper.

**COUNT II**
**BREACH OF CONTRACT**

96.     Plaintiffs restate and reallege paragraphs 1 through 80 as if fully set forth therein.

97.     Plaintiffs and Defendants executed a contract at the time Plaintiffs purchased their timeshare use rights from Defendants. The terms of that contract include promises and affirmations of fact made by Defendants that Plaintiffs would be able to rent out their use rights in a lawful manner, and without interference from Defendants.

98.     These promises and affirmations constituted expressed warranties, became part of the basis of the bargain, and are part of a contract between Plaintiffs on one hand, and Defendants on the other.

99.     Additionally, Plaintiffs and Defendants agreed that Plaintiff had the right to acquire resale timeshare interests and deposit them into Defendants' Club for a specific period of time.

100.     Defendants relied on these express terms of their contracts and purchased resale timeshare interests.

101.     These promises and affirmations that Plaintiffs would be able to deposit and utilize resale timeshare interests without impediment in Defendants' Club system constituted expressed

16

warranties, became part of the basis of the bargain, and are part of the contracts between Plaintiffs on one hand, and Defendants on the other.

102.     Without these promises and contractual terms Plaintiffs would not have purchased from Defendants.

103.     Plaintiffs relied on these terms to their detriment when making additional resale purchases to deposit into Defendants' Club.

104.     All conditions precedent to Plaintiffs bringing an action under these contracts against Defendants have been satisfied.

105.     Defendants breached the terms of these contracts, including the expressed warranties, by Defendants unilateral termination of Plaintiffs' assignment agreements, and Defendants not permitting Plaintiffs to rent their timeshare use rights in a lawful manner according to the agreed upon terms.

106.     As a result of Defendants' breach of contract and warranties, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants for actual damages, consequential damages, costs, interest, reasonable attorney's fees, enjoinder from further violations of these parts and any other such relief this Court may deem just and proper.

## COUNT III
## FRAUD

107.     Plaintiffs restate and reallege paragraphs 1 through 80 as if fully set forth therein.

108.     Defendants committed a fraud by making a false representation or misrepresentation as to (1) the existing fact that Plaintiffs had the right to rent out their timeshare use rights, and that (2) Plaintiffs, without limitations, could purchase resale interests and deposit

17

those interests in the Club, to be used for Plaintiffs benefit. See attached Exhibits "A," "B," and "C."

109.    Defendants knew that its representations were false, and Defendants intended to induce Plaintiffs into purchasing additional timeshare use rights, in the form of "points."

110.    Defendants' misrepresentations were material to the purchase and materially alter the rights and responsibilities of the parties under the contract.

111.    Plaintiffs justifiably relied on Defendants representations. Plaintiffs had every right to rely on representations of Defendants, as Defendants are in the regular business of selling timeshare interests and are in a superior position to know the true nature of their complex Club scheme.

112.    Defendants continue to perpetrate this point rental fraudulent practice on their customers, including Plaintiffs, by continuing to promote rental abilities, while unilaterally revoking Plaintiffs' rental ability.

113.    This fraudulent practice is evidenced by Plaintiffs' interactions with Defendants' agent, sales manager Scott McCullough.

114.    Plaintiffs were consequently and proximately injured by their reliance on Defendants' misrepresentations regarding the use and rental abilities of Plaintiffs' timeshare use rights.

    **WHEREFORE**, Plaintiffs respectfully request judgment against Defendants for actual damages, consequential damages, costs, interest, reasonable attorney's fees, enjoinder from further violations of these parts and any other such relief this Court may deem just and proper.

<u>COUNT IV</u>
<u>PROMISSORY ESTOPPEL</u>

115.    Plaintiffs restate and reallege paragraphs 1 through 80 as if fully set forth therein.

116.    Defendants made a false representation or misrepresentation as to (1) the existing fact that Plaintiffs had the right to rent out their timeshare use rights, and that (2) Plaintiffs, without limitations, could purchase resale interests and deposit those interests in the Club, to be used for Plaintiffs benefit. See attached Exhibits "A," "B," and "C."

117.    Defendants knew that its representations were false, and Defendants intended to induce Plaintiffs into purchasing additional timeshare use rights, in the form of "points."

118.    Defendants' misrepresentations were material to the purchase and materially alter the rights and responsibilities of the parties under the contract.

119.    Plaintiffs justifiably relied on Defendants' representations. Plaintiffs had every right to rely on representations of Defendants, as Defendants are in the regular business of selling timeshare interests and are in a superior position to know the true nature of their complex Club scheme.

120.    Plaintiffs were consequently and proximately injured to the detriment by their reliance on Defendants' misrepresentations regarding the use and rental abilities of Plaintiffs' timeshare use rights.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants for actual damages, consequential damages, costs, interest, reasonable attorney's fees, enjoinder from further violations of these parts and any other such relief this Court may deem just and proper.

<u>COUNT V</u>
<u>FAILURE OF CONSIDERATION</u>

121.    Plaintiffs restate and reallege paragraphs 1 through 80 as if fully set forth therein.

122.    The contracts, between Plaintiffs and Defendants remain executory as the Defendants have an ongoing contractual duty to honor them with each passing year on reasonable terms and conditions.

19

123.    Plaintiffs' ability to rent their timeshare interest use rights is a material term to each of the contracts.

124.    Without the ability to rent, the points purchased and assigned to Plaintiffs are essentially worthless and lacking intrinsic value due to Plaintiffs' inability to afford the annual dues imposed for the maintenance thereof, which is in excess of $27,000 annually.

125.    Additionally, the use rights are essentially worthless in that the use rights carry a reoccurring and ongoing monetary obligation to pay maintenance and administrative fees. The cost associated with such fees far exceed any intrinsic value conferred to Plaintiffs.

126.    Moreover, the use rights are inalienable to any third party on a secondary market, even if owned outright, and inalienable even to Defendants, who will not accept a re-conveyance of title back to Defendants, even at Defendants' published fair market value.

127.    Consistent with the foregoing allegations, the use rights are intrinsically without value for which the Plaintiffs bargained contractually and have failed as consideration therefore.

128.    As a proximate and direct result of the foregoing allegations, Plaintiffs have sustained financial loss, including but not necessarily limited to any and all amounts paid to Defendants and their predecessors in interest.

129.    Plaintiffs have sustained financial loss in the amounts paid to acquire resales from third parties from whom the Plaintiffs acquired their interests contractually.

130.    Plaintiffs have also suffered financial loss for all maintenance fees paid under their contracts, and all fees paid for 'maintenance' or other assessments in the nature of administrative fees.

131.    In the alternative to the foregoing calculation of loss, the Plaintiffs have suffered the loss of the value which the Defendants publicly and currently assign to the points to which the Plaintiffs are entitled.

132.    Defendants publicly and currently assign Defendant DRI US Collection points a $8.52 per point valuation.

133.    Plaintiffs own 167,000 Defendant DRI US Collection points, which at Defendants' valuation are worth $1,422,840.

134.    Defendants publicly and currently assign Defendant DRI's Hawaii Collection points a $9.84 per point valuation.

135.    Plaintiffs own 28,500 points in Hawaii, that Defendant DRI would now consider and sell as part of the Hawaii Collection, which at Defendants' valuation are worth $280,440.

136.    Accordingly, Defendants combined evaluation of Plaintiffs' points have a published market value of $1,703,280.00.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants for actual damages, consequential damages, costs, interest, reasonable attorney's fees, enjoinder from further violations of these parts and any other such relief this Court may deem just and proper.

<u>**COUNT VI**</u>
<u>**QUANTUM MERUIT**</u>

137.    Plaintiffs restate and reallege paragraphs 1 through 80 as if fully set forth therein.

138.    This Count is pled in the alternative to legal relief to the extent that the same is found to be inadequate to address the Plaintiffs' grievances herein.

139.    Consistent with the allegations of paragraphs 1 through 80 hereof, the Defendants have knowingly been financially enriched through receipt of consideration unreasonably retained in light of the circumstances reflected throughout this Complaint.

140.     It would be inequitable to allow Defendants to retain the consideration paid under the circumstances pled in this Complaint.

141.     Plaintiffs request that this Court enter an award for damages to the extent that Defendants have been unjustly enriched under the contracts referenced herein.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants for actual damages, consequential damages, costs, interest, reasonable attorney's fees, enjoinder from further violations of these parts and any other such relief this Court may deem just and proper.

## <u>COUNT VII</u>
## <u>CONVERSION</u>

142.     Plaintiffs restate and reallege paragraphs 1 through 80 as if fully set forth therein.

143.     The points assigned by Defendants to Plaintiffs are personal property.

144.     Defendants wrongfully, and intentionally acted with dominion and control over the personal property of Plaintiffs.

145.     Defendants' wrongful and intentional acts denied Plaintiffs the use and enjoyment of Plaintiffs' owned personal property.

146.     The acts of Defendants derogated, excluded, and defied Plaintiffs' rights and title to the personal property.

147.      Plaintiffs were consequently and proximately damaged by Defendants' actions relating the use and rental abilities of Plaintiffs' timeshare use rights, and Defendants exercised dominion and control of Plaintiffs' personal property by unilaterally terminating the assignment of points.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants for actual damages, consequential damages, costs, interest, reasonable attorney's fees, enjoinder from further violations of these parts and any other such relief this Court may deem just and proper.

22

## COUNT VIII
## VIOLATION OF THE FLORIDA
## VACATION PLAN AND TIMESHARING ACT

148.   Plaintiffs restate and reallege paragraphs 1 through 80 as if fully set forth therein.

149.   Defendants are developers as defined by Florida Statute. Fla. Stat. § 721.05(10). As developers, Defendants must comply with the Florida Vacation Plan and Timesharing Act. Fla. Stat. § 721.01 *et seq*.

150.   A developer offering a program, or in Defendants' case the Club, where owners can exchange occupancy rights must provide prospective purchasers a full and fair disclosure of all limitations and restrictions of the program. *See* Fla. Stat. § 721.02.

151.   Further, Chapter 721, Florida Statutes, makes it unlawful to engage in deceptive or unfair acts during the sale of a timeshare, including misrepresenting the conditions of a purchaser's exchange rights. *See* Fla. Stat. § 721.26(7)(a)-(b).

152.   Moreover, the Florida Vacation Plan and Timesharing Act states that:

> "[n]o person shall participate, for consideration or with the expectation of consideration, in a plan or scheme, a purpose of which is to transfer a consumer resale timeshare interest to a transferee that the person knows does not have the ability, means, or intent to pay all assessments and taxes associated with the consumer resale timeshare interest."

Fla. Stat. § 721.17(3)(e).

153.   During the execution of the 2007 and 2008 Contracts, Plaintiffs were told by Defendants that since they were already "legacy" owners, that they did not need updated Governing Rules and Regulations.

154.   Plaintiffs never received Governing Documents for the Club Rules and Regulations relating to their 2007 and 2008 contracts.

155.    As a developer, Defendants are required to provide purchasers, such as Plaintiffs, a complete and accurate description of all limitations and restrictions of the program, or in Defendants case, The CLUB®.

156.    Defendants did not provide Plaintiffs with the Governing Documents for the Club Rules and Regulations, and thus did not provide Plaintiffs with a complete and accurate description of the limitations and restrictions of The CLUB®.

157.    Therefore, Defendants have violated Florida Statutes § 721.26(7)(a) and § 721.26(7)(b).

158.    Additionally, Defendants' misrepresentations regarding the conditions upon which Plaintiffs may use or exchange their occupancy rights, coupled with the fact that Defendants sold and assigned Plaintiffs an incomprehensible amount of points for their supposed individual use, Defendants knowingly participated for consideration in a scheme for which Plaintiffs do not have the ability, means, or intent to pay all assessments and taxes for the timeshare, and Defendants have thus committed a false, misleading or deceptive act or practice in violation of Florida Statutes. Fla. Stat. § 721.17(3)(e).

159.    Plaintiffs reserve the right to allege other violations of this Chapter as Defendants' conduct is ongoing.

160.    As a direct and proximate result of Defendants' unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiffs have been damaged and are entitled to recover actual damages to the extent permitted by law, in an amount to be proven at trial.

161.    In addition, Plaintiffs seek equitable relief and to enjoin Defendants on the terms that this Court considers reasonable.

162.    Plaintiffs further seek an award of reasonable attorneys' fees and costs under Florida Statutes § 721.21.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants for statutory damages, actual damages, consequential damages, costs, interest, reasonable attorney's fees, enjoinder from further violations of these parts and any other such relief this Court may deem just and proper.

## COUNT IX
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## FLORIDA STATUTES SECTION 501.201

163.    Plaintiffs restate and reallege paragraphs 1 through 80 as if fully set forth therein.

164.    Plaintiffs are residents and citizens of the State of Florida.

165.    Plaintiffs are "consumers" as defined by Florida Statute § 501.203(7), and Defendants actions are "trade or commerce" as defined by Florida Statute § 501.203(8).

166.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

167.    For the reasons alleged herein, Defendants violated and continue to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed in Florida Statute § 501.201, *et seq*. Defendants' affirmative misrepresentations, omissions and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including Plaintiffs, who were consumers acting reasonably under the circumstances to their detriment.

168.    Defendants' actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged above, *inter alia*, Defendants engaged in deceptive misrepresentations and omitted material facts regarding their timeshare interest use rights, and acted unconscionably by unilaterally revoking the assignment agreements entered into by Plaintiffs, thereby offending an established public policy, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers such as Plaintiffs.

169.    Plaintiffs reserve the right to allege other violations of FDUTPA as Defendants' conduct is ongoing.

170.    As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged therein, Plaintiffs have been damaged and are entitled to recover actual damages to the extent permitted by law, in an amount to be proven at trial. In addition, Plaintiffs seek equitable relief and enjoin Defendants on the terms that the Court considers reasonable.

171.    Plaintiffs seek an award of reasonable attorneys' fees and costs under FDUTPA. Fla. Stat. § 501.2105.

**WHEREFORE**, Plaintiffs respectfully demand a trial on all issues triable and judgment against Defendants for statutory damages, actual damages, consequential damages, costs, interest, reasonable attorney's fees, enjoinder from further violations of these parts and any other such relief this Court may deem just and proper.

## <u>NOTICE OF ENTITLEMENT TO ATTORNEYS FEES AND COSTS</u>

Plaintiff are entitled to an award of their attorneys' fees and costs pursuant to Florida Statutes § 721.21 and Florida Statutes § 501.2105. Plaintiffs are obligated to pay their attorneys a

reasonable fee and reimburse their attorneys for reasonable costs expended in prosecuting this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs seek judgment against Defendants as follows:

1.      For Plaintiffs, all actual, consequential, and incidental losses including, but not limited to, loss of rental benefits and revenue, and loss of meaningful use and benefits of their timeshare interests, including the full market value of their points according to proof, together with prejudgment interest;

2.      For injunctive relief;

3.      For Plaintiffs, general damages according to proof;

4.      For attorney's fees pursuant to statutes;

5.      For costs of suit; and

6.      For such other and further relief as this Court deems proper.

## JURY TRIAL DEMANDED

Plaintiffs demand trial by jury of all issues so triable.

DATED: August 25, 2017

Respectfully submitted,

  /s/ Sean R. Kelly
Sean R. Kelly, Esq.
Fla. Bar No. 0124404
Finn Law Group, P.A.
7431 114th Ave., Suite 104
Largo, FL 33773
Phone: (727) 214-0700
Primary e-mail: sean@finnlawgroup.com
Secondary e-mail: pleadings@finnlawgroup.com
Secondary e-mail: michaeldfinn@finnlawgroup.com
*Attorneys for Plaintiffs*

27